IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KRISSIE MAE TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:16-CV-200 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO REVERSE THE DECISION OF THE COMMISSIONER**

Plaintiff KRISSIE MAE TREVINO brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner of Social Security (Commissioner), denying plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be remanded for further administrative proceedings.

I.
ADMINISTRATIVE PROCEEDINGS

On March 6, 2013, plaintiff Krissie Mae Trevino protectively filed her applications for social security disability benefits initially raising complaints of deteriorating disc and arthritis in back, degenerative disc disease and rheumatoid arthritis. (Administrative Transcript (Tr.) 59;

64).[1]   The Commissioner denied benefits initially on April 19, 2013 and upon reconsideration on June 27, 2013.   (Tr. 86-91; 96-99).   Upon plaintiff's request, a video hearing was held before an Administrative Law Judge (ALJ) on August 5, 2015.   (Tr. 40-55).   At the hearing, through her representative, plaintiff amended her disability onset date to reflect the date May 7, 2013 instead of May 1, 2010.   (Tr. 43).   On the date of the hearing, plaintiff was 32 years old and had received her General Equivalency Diploma (GED).   (Tr. 43; 52).   Plaintiff had past relevant work as: a caregiver, performed at the medium, semiskilled level; and as a property manager, performed at the light, skilled level.   (Tr. 31; 52).   On September 10, 2015, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision.   (Tr. 20-33).   Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching her decision, the ALJ followed the five-step sequential process in 20 C.F.R. § 404.1520(a) and 416.920(a).   The claimant has the initial burden of establishing a disability in the first four steps in the analysis.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).   At Step One, the ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date.   (Tr. 25).   At Step Two, the ALJ found plaintiff's chronic back pain secondary to degenerative disc disease of the lumbar, cervical, and thoracic spinal regions with lumbar and cervical radiculopathy/radiculitis were severe impairments but found her migraine headaches to be non-severe.   (Tr. 25; 27).   At Step Three, the ALJ concluded plaintiff did not have an impairment or combination of impairments

---

[1] Plaintiff's complaints upon intake were listed as "Detereating discs and remotry athritus in back[.] Degenerative disc disease [and] rheumatoid arthritis."   (Tr. 57; 62).   The Court references the Findings of Fact and Analysis of Evidence notes from the reviewing state consultants for clarification.   (Tr. 59; 64).

that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 28).

After an extensive review of the medical record, the ALJ determined plaintiff was not entirely credible regarding her impairments and their impact on her ability to work.   (Tr. 31). In so finding, the ALJ next evaluated plaintiff's RFC, reaching the conclusion plaintiff was able "[t]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that requiring more than occasionally stopping (sic), crouching and kneeling."   (Tr. 28).   The ALJ's decision references light work and appears to indicate plaintiff was capable of performing *more* than occasional stooping, crouching and kneeling; however, a review of the hypothetical posed to the Vocational Expert (VE) at the administrative hearing clarifies she referenced a hypothetical claimant possessing the strength to "[p]erform a wide range of light work with only occasional stooping, kneeling, and crouching."   (Tr. 53).[2]

The ALJ next found, at Step Four, that plaintiff could return to her past relevant work as a Property Manager, a job the ALJ classified as light, skilled and not requiring the performance of work-related activities precluded by plaintiff's RFC.   (Tr. 31).   Alternatively, at Step Five, based on the RFC determination and VE testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy including Cashier II, Arcade Attendant, and Parking Lot Attendant.   (Tr. 32-33).   The ALJ found plaintiff was not under a disability at any time between May 7, 2013, the amended alleged onset date, and September 10, 2015, the date of the ALJ decision.   (Tr. 33).

---

2 According to the Vocational Expert Handbook published by the Social Security Administration (August 2017), the full range of Light Work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."

## II.
## STANDARD OF REVIEW

Courts have adopted what amounts to a "harmless error" standard of review regarding matters of administrative procedure in Social Security cases. Courts will order remand in cases with procedural error if the substantial rights of a party have been affected ... but "procedural improprieties ... will ... constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

## III.
## ISSUES

The ALJ in this case made the determination plaintiff is not disabled at Step Five of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4). Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To that extent, plaintiff raises only claims that the ALJ failed to properly:

1. Weigh the medical evidence of record and determine plaintiff's RFC; and
2. Evaluate plaintiff's credibility.

(ECF 10 at 2).

## IV.
## MERITS

Plaintiff first alleges the ALJ failed to give proper weight to the opinions of treating physician, Dr. Thomas Darter and treating neurosurgeon, Dr. Sanjoy Sundaresan. Plaintiff included in her brief a recitation of her limited contact with treating pain management specialist, Dr. Miles Day, as does the Court; however, she does not argue Dr. Day's opinion was given insufficient weight or is relevant to the issues addressed herein.[3]

### A. Treating Physician - Dr. Darter - General Practice

The medical records indicate plaintiff was a long-term patient of Dr. Darter's dating back to November 22, 2010 when she presented as approximately seven weeks pregnant. (Tr. 290). Plaintiff visited the doctor multiple times for various reasons through the years. This past medical history, although submitted to the ALJ and this Court, does not appear to be relevant in light of the fact that plaintiff's onset date was changed, by the parties' agreement, to May 7, 2013. It was on this date that Dr. Darter drafted and signed a letter stating:

> Krissie Trevino has been a patient of mine since 2011. She has been diagnosed with Rheumatoid arthritis and Degenerative Disc Disease. She is permanently unable to perform any kind of work due to chronic back pain. She is currently under my care as well as being referred to a pain management specialist.

(Tr. 373). As set out by plaintiff, Dr. Darter's August 15, 2013 Medical Release/Physician's Statement concluded that plaintiff, as a result of her degenerative disc disease of the lumbar spine, could only sit 2 hours in an 8-hour workday, could not stand, walk, climb stairs/ladders, kneel/squat, bend/stoop, push/pull, use a keyboard, or lift/carry at all in an 8-hour workday, and this condition was permanent. (Tr. 463). Plaintiff directs the Court to multiple treatment dates

---

[3]The Court has reviewed the medical records submitted with emphasis on those portions cited by the parties. It is not the Court's intention to provide an exhaustive reproduction of those records but merely a succinct history of plaintiff's condition. Any legal issue requiring a more in-depth analysis will be addressed herein.

between October 17, 2013 and November 14, 2013 where she continued to experience pain requiring the doctor's continued care. (Plaintiff's Brief at 2, Tr. 493; 494; 498; 499-503). Plaintiff also references her participation in four physical therapy sessions between November and December of 2013. (*Id.*, Tr. 506-514).

Plaintiff's timeline of treatment continued from December 4, 2013, at which point her pain was accompanied by weakness, restlessness, and decreased range of motion (*Id.*, Tr. 792); including an MRI of the thoracic spine on December 11, 2013, showing minimal asymmetry, some tiny disc protrusions at T8-9 and T10-11 and small Schmorl's nodes within the inferior plate of T12 and the superior plate of L1 (*Id.*, Tr. 584). As set out by plaintiff, she continued to see Dr. Darter, and on several occasions a nurse practitioner in his office, in January of 2014 for continued worsening of her symptoms which escalated to chronic pain, numbness in her lower extremities, numbness and decreased range of motion. (*Id.*, Tr. 799-802; 806-07). Plaintiff cites to a January 28, 2014 Multiple Impairment Questionnaire completed by Dr. Darter referencing her lumbar radiculopathy. Although plaintiff had normal reflexes and good strength, the doctor expected these to worsen over time. (Tr. 1030). The doctor noted plaintiff's severe pain caused by sitting and standing for more than 30 minutes, as well as walking, bending, laying down, stooping, thrusting and lifting. (Tr. 1031-32). Dr. Darter determined plaintiff was restricted in that she was only able to sit and stand/walk for less than an hour each in an 8-hour workday, that she needed to get up and move around every hour for 20 minutes, that she was unable to lift or carry even 5 pounds, that she was essentially precluded from performing fine and gross manipulations and reaching with her upper extremities, that her concentration was affected, and that she was incapable of tolerating even a low amount of work

stress.  (Tr. 1032-1035).  The doctor concluded that in a typical 8-hour workday, plaintiff would need to rest for an hour after every hour of work and that while she may have good and bad days, she would still be expected to miss more than 3 days of work per month.  (Tr. 1035-36).

Of note from the remaining references of plaintiff's condition up to May of 2015 is an MRI, conducted February 28, 2014, showing "[a] minimal broad-based annular disc bulging at C3-4, a small posterior central disc protrusion at C4-5, and loss of cervical lordosis." (Plaintiff's Brief at 5, Tr. 574).  The doctor continued to treat plaintiff with medications and, on at least one occasion, injections for pain.  (Plaintiff's Brief at 5-6).

### B.  *Treating Physician - Dr. Sanjoy Sundaresan - Neurosurgeon*

Dr. Sundaresan, upon meeting plaintiff on October 20, 2014, diagnosed her with cervical and lumbar facet syndrome, cervical and lumbar radiculitis, sacroiliitis, hip arthritis, and ankle arthritis.  (Tr. 911).  It appears from the records Dr. Sundaresan had reviewed copies of plaintiff's previous MRI's dated July 16, 2013, December 11, 2013, and February 28, 2014 and noted, "Plain spine films do not show enough detail (such as the disks and nerves).  Scans will need to be ordered."  (Tr. 909).  The doctor offered plaintiff physical therapy but she declined, instead requesting spinal injections.  (Tr. 911).  The doctor instructed plaintiff to do spinal exercises on her own to the extent her pain allowed and noted that her chronic pain "[i]s unlikely to be cured by surgery."  (Tr. 912).

Around November 17, 2014, Dr. Sundaresan conducted a thoracic "A-Delta pain fiber NCS" test resulting in a finding "[c]onsistent with nerve irritation and possible nerve damage at the root levels" and planned to continue plaintiff's medications and/or spinal injections.  (Tr.

908).   On December 15, 2014, the doctor's follow-up notes indicate the medications were improving patient function, both physical and psychosocial, at least partially, and they helped plaintiff "walk farther," but it was noted the injections had just started and it was too early to assess efficacy.   (Tr. 904-05).   Plaintiff visited Dr. Sundaresan on January 19, 2015 with much the same result.   (Tr. 900-03).   On February 16, 2015, the doctor's notes indicate findings consistent with nerve irritation and possible nerve damage at the root levels, as the result of an EMG/NCV test performed for the lower extremities.   (Tr. 899).   Plaintiff continued her treatment and injections on March 16, 2015 (Tr. 895-898); April 13, 2015 (Tr. 891-894); and May 11, 2015.   (Tr. 888-890).

Dr. Sundaresan completed a Spinal Impairment Questionnaire on June 4, 2015 and diagnosed chronic pain syndrome, cervical radiculitis, lumbar radiculitis, thoracic spondylosis, and lumbar spondylosis.   (Tr. 1023).   The doctor indicated he based his diagnosis on MRI test results.   (*Id.*).   The doctor further found a neuro-anatomical distribution of moderate to severe pain from the neck into the upper extremities and the back into the lower extremities that was worsened by "standing, ambulating, [and] range of motion."   (*Id.*).   The doctor made clinical findings of limited range of motion in the thoracic, lumbar and cervical spine as well as tenderness in the latter two.   (Tr. 1024).   In response to questions about plaintiff's ability to work, Dr. Sundaresan surmised that in an 8-hour workday she could sit for 2 hours, stand/walk for less than 1 hour, that she could not continuously remain seated in an 8-hour workday *i.e.* every hour she would need to get up and move around for 5-10 minutes.   (Tr. 1026).   Plaintiff would not need to elevate her legs while seated.   (*Id.*).   The doctor found plaintiff could lift up to 10 pounds frequently and up to 20 pounds occasionally, and that she could carry up to 5

pounds frequently, up to 20 pounds occasionally, but that she could never lift or carry over 20 pounds. (*Id.*). The doctor found plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces but that she could use standard public transportation, carry out routine ambulatory activities such as shopping and banking, and could climb a few stairs at a reasonable pace with only the use of a single handrail. (*Id.*). The doctor determined plaintiff could stand or walk without the use of a cane or other assistive device, such as two canes, crutches, a walker or a wheelchair. (*Id.*). The plaintiff was found to have no significant limitations in reaching, handling, or fingering. (Tr. 1027). The doctor opined that plaintiff's symptoms of pain would be exacerbated in a competitive work environment to the point of frequent pain one third to two thirds of an 8-hour workday, that this would require two to three unscheduled breaks during the workday lasting five to ten minutes each, and that ultimately, plaintiff would miss two to three days of work a month. (Tr. 1027-28).

The medical records on file show plaintiff visited Dr. Sundaresan on June 10, 2015, six days after the Spinal Impairment Questionnaire, to receive her spinal injections and the doctor noted that after the prior injection plaintiff achieved 50% relief that lasted five weeks; that is, her pain level went from a 10 to a 5. (Tr. 1137). The last entry from this doctor on July 15, 2015, showed the same result with the only exception that the relief lasted six weeks. (Tr. 1133).

    C.  *Treating Physician - Dr. Miles Day - Anesthesiologist/Pain Management Specialist*

According to the records before the Court, plaintiff initially visited Dr. Miles Day, an anesthesiologist/pain management specialist, on June 3, 2013. [Tr. 768]. Dr. Day diagnosed disorders of sacrum and lumbar spondylosis without myelopathy. [Tr. 769]. Dr. Day scheduled bilateral sacroiliac joint injections and bilateral L3-4, L4-5, and L5-S1 diagnostic facet block

injections that were completed on July 24, 2013. [Tr. 769; 780-81]. Dr. Day followed up with plaintiff on August 12, 2013 and because plaintiff reported no "significant difference after [the] procedure," he scheduled her to receive bilateral L3-S1 diagnostic facet block injections on August 21, 2013. [Tr. 786].

### D. *The ALJ Procedurally Erred in Evaluating the Treating Source Medical Opinions*

Plaintiff argues the ALJ in this case was obligated to give controlling weight to the opinions of treating physicians Drs. Darter and Sundaresan. (ECF 10 at 16). The ALJ instead did not give "controlling weight or even significant weight" to these treating physicians. (Tr. 31). Such failure to explain the weight given was not harmless error. (ECF 10 at 14). Plaintiff alternatively argues that assuming *arguendo* the opinions of the treating doctors were not entitled to controlling weight, the ALJ still erred because she did not weigh the opinions under the criteria of the section 404.1527(c) factors.

In determining whether a claimant is disabled for the purpose of awarding disability benefits, the medical opinion of a treating source is generally entitled to considerable weight because of the source's familiarity with the claimant's impairments, treatments and responses. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). In fact, the medical opinion of a treating source on the issues of the "nature and severity" of a claimant's impairment will be given "controlling weight" in a disability evaluation if the medical opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is not inconsistent with the other substantial evidence in the claimant's case record. 20 C.F.R. § 404.1527(c)(2); S*ee Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995).

An ALJ may, however, "reject" the medical opinion of a treating source - that is, give the

treating source medical opinion "less weight, little weight, or even no weight," *Perez v. Barnhart*, 415 F. 3d 457, 465-66 (5th Cir. 2005) - when (1) the evidence supports a contrary conclusion, <u>and</u> (2) good cause is shown - such as when a treating source's statements or evidence is (a) brief and conclusory, (b) unsupported by a medically acceptable clinical, laboratory or diagnostic techniques, or (c) otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).

The Court finds the first step should be to determine if the ALJ rejected giving controlling weight to a treating physician's opinion based upon contradicting medical evidence or failure to perform adequate diagnostic testing. Both parties agree diagnostic testing was performed by both Drs. Darter and Sundaresan. The parties also agree the ALJ did not give these treating physician opinions controlling weight. The ALJ, however, did not identify what contradicting medical evidence or doctor's opinion she relied upon to reject the treating physicians' opinions.[4] Because the ALJ failed to identify any contradicting opinion evidence or lack of diagnostic testing, the Court finds the ALJ was required to perform the section 404.1527(c) six-factor analysis discussed above. The parties agree this was not done.

If the ALJ does not find contradicting opinion evidence or lack of diagnostic testing, and declines to give a treating source medical opinion "controlling weight," an ALJ then must consider the following factors set forth under 20 C.F.R. § 404.1527(c) in determining the weight to give to that treating source medical opinion:

---

[4] As reasoned by plaintiff, to the extent it can be argued the ALJ relied in part on the opinions of non-examining medical sources *i.e.* state agency consultants, the first consultant reviewed plaintiff's file on April 10, 2013, prior to the amended onset date, and the second consultant reviewed medical records only through June 2013, one month after the onset of plaintiff's disability and more than two years prior to the ALJ's decision. In any event, these consultants did not examine plaintiff; thus, the ALJ cannot consider their reports to constitute competing medical opinions that would excuse her from her duty to perform the section 404.1527(c) six-factor analysis. *See Frierson-Simiyu v. Berryhill*, 2017 WL 6611579 (N.D. Tex. Dec. 27, 2017).

      - the treating source's length of treatment of the claimant;

      - the treating sources' frequency of examination;

      - the nature and extent of the treatment relationship;

      - the support of the treating source's opinion afforded by the medical evidence of record;

      - the consistency of the opinion with the record as a whole; and

      - the specialization, if any, of the treating source.

*Id.* at 455. If there are controverting medical opinions from treating or examining sources competing with the treating source opinion the ALJ is declining to give controlling weight, *i.e.*, if the ALJ is not rejecting the sole relevant medical opinion of a treating source in the record, then the ALJ need not set forth his detailed analysis of the section 404.1527(c) factors in his decision with regard to the treating source medical opinion receiving less than controlling weight. *See Qualls v. Astrue*, 339 Fed. Appx. 461, 467 (5th Cir. 2009).

      "Failure to adhere to the procedures proscribed by the Social Security regulations is sufficient ground for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 290 F.Supp.2d 497, 515 (S.D. Tex. 2003) (*citing Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). However, such a failure does not necessarily dictate a remand for further review. The Court may decline to reverse and remand on procedural grounds when it is clear that the procedural error did not compromise the decision-making process. As a logical matter, it makes little sense to reverse and remand for technical failings that do not influence the outcome. *Id.* Therefore, the Court may affirm despite the procedural error if the plaintiff was not prejudiced due to the error, as the requisite procedures exist solely to guarantee an accurate assessment of the evidence. *Id.* A plaintiff may establish prejudice, however, by showing

"there is a realistic probability that the ALJ would have reached a different conclusion absent the procedural error" in question. *Esparza v. Berryhill*, 2017 WL 6513634 (N.D. Tex. November 27, 2017) (quoting *Ware v. Colvin*, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013)).   In other words, this Court must evaluate whether the error was harmless.

In this case, the ALJ's failure to properly consider the opinions of both Drs. Darter and Sundaresan, who both found disabling work-related limitations, is not harmless.  ALJs pose hypotheticals to VEs based on RFC possibilities.   ALJs determine the *likely* RFC parameters utilizing the medical records and the weight given to these medical records.   Although in this case, at the time of the hearing the ALJ had not yet made a formal determination of the weight she would afford to the opinions of Drs. Darter and Sundaresan, neither of the hypotheticals posed incorporated the restrictions found by these doctors.   The ALJ posed two hypothetical questions to the VE.   The first one, incorporating the full range of light work (walking up to 6 hours in an 8-hour workday) with only occasional stooping, kneeling, and crouching, led to a VE finding of an ability to work, both in past relevant work and other work in the economy.   (Tr. 28, 53).   The second hypothetical, including the ability to sit, stand and walk for up to five hours per day (with a reduction in concentration), precluded work.   (Tr. 54).

Without the ability of this Court to review the ALJ's *reasons* for giving less than controlling weight to the opinions of Drs. Darter and Sundaresan, and without knowing *what weight* was ultimately given to these opinions, this Court cannot say if portions of the doctors' recommended limitations should have been incorporated into a hypothetical to the VE.   Further, it is clear that even small changes to limitations can significantly impact RFC determinations and in turn, available jobs.

By failing to conduct the 20 C.F.R. § 404.1527(c) 6-factor analysis, the ALJ put this Court in the position of guessing her reasoning for the RFC determination and the resulting hypotheticals.   Therefore, plaintiff was prejudiced because, had the ALJ more properly analyzed the records and given more weight to the opinions of either or both Drs. Darter and Sundaresan, she may have found plaintiff disabled.   Moreover, while the ALJ says she considered the factors set out under Section 404.1527(c) in declining to give the opinions of Drs. Darter and Sundaresan "controlling weight or even significant weight" she failed to elaborate on that required analysis and state what weight she did attribute to these opinions.

Because these doctors found work-related limits that would result in a finding of disability, the failure to properly consider their opinions is not harmless.   In other words, if the ALJ had accorded more weight to their opinions, it is possible that she could have found plaintiff disabled.[5]

### E.   *Other Issues Presented*

Plaintiff's other issue centers around the ALJ determination of her credibility.   The Court declines to reach this issue in light of the above determination.

## V. RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff

---

[5] Additionally, the ALJ stated she gave the two state agency consultants' findings "partial (not great or considerable) great weight."   (Tr. 31).   While this finding does not implicate the six-factor analysis of section 404.1527(c), it does enter into the harm analysis due to the change in plaintiff's disability onset date at the hearing from May 1, 2010 to May 7, 2013 as these dates relate to the consultant review dates previously discussed.   *See Supra* text of Footnote 4.

KRISSIE MAE TREVINO not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for further administrative review consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 2, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857

F.2d 275, 276-77 (5th Cir. 1988).